UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

2012 JUL 10  AM 11: 47

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

IRMA J. LAWRENCE,

         Plaintiff,

      v.

THE CITY OF NEW YORK,
SERGEANT COLLINS, Shield #1935,
POLICE OFFICER FALLER Shield # 28009,
and POLICE OFFICER WELLS, tax id #994186
         Defendants.

**CIVIL COMPLAINT**

INDEX NO.

CV 12 - 3397

ROSS, J.

GO, M.J.

## I. PRELIMINARY STATEMENT

1. This is a civil rights action against the Defendant parties, individually and collectively,

for violation of Plaintiff's guaranteed constitutional and civil rights.

2. This action arises out of the plaintiff's false arrest and the excessive use of force

during that arrest.

3. The Plaintiff seeks monetary damages for the unconstitutional acts which have

caused injury and damage to her.

## II. JURISDICTION and VENUE

4.     Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections

1331 and 1343 (a) in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and

the Fourth and Fourteenth Amendments to the United States Constitution.

5.     The value of the rights in question is in excess of $100,000.00 exclusive of

interest and costs.

1

6.     The Plaintiff also invokes the jurisdiction of this Court in conjunction with the

Declaratory Judgment Act, 28 U.S.C. Sections 2201, et. seq., this being an action in which the

Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is

deemed necessary and desirable and in the interest of justice in order to provide the Plaintiff

with a full and complete remedy for the violation of her rights.

### III. JURY TRIAL DEMANDED

7.  Plaintiff demands a trial by jury on each and every one of his claims as set for the

below.

### IV. CONDITION PRECEDENT

8. Prior to the filing of this complaint, and within the time prescribed by law, a sworn

Notice of Claim stating, among other things, the time when and the place where the injuries and

damages were sustained, together with plaintiff's demands for adjustment thereof were duly

served on the plaintiff's behalf upon the City of New York and the individually named defendants.

6. The City of New York has refused or neglected for more than 30 days and up to the

commencement of this action to make any adjustments or payment thereof, and that thereafter,

and within the same time provided by law, this action was commenced.

### IV. PARTIES

7.  Plaintiff Irma Lawrence is a Caribbean American citizen, born in Jamaica and a

resident of the City of New York, County of Queens, State of New York.

8. Lawrence is 79 years of age.

9. Lawrence resides in Queens County with her brother Basil Miles.

2

10. Basil Miles is also retired and he is presently 70 years of age.

11. Lawrence's date of birth is April 7, 1933.

12. Lawrence is approximately 5'2" tall and weighs 115 pounds.

13. Lawrence is retired from employment with the City of New York, Department of Human Resources.

14. Lawrence is a highly recognized and respected member of her community who serves the public interest and holds positions with a number of community organizations.

15. Lawrence has contributed throughout her life to the public good and her contributions as a community leader have been recognized by Mayor Bloomberg and Police Commissioner Kelly.

16. Lawrence has received numerous awards and commendations for her community service.

17. Defendant THE CITY OF NEW YORK is and was at all times relevant a municipal entity created and authorized under the Laws and Constitution of the State of New York to conduct law enforcement activities within the state of New York.

18. Defendant Faller is a Police Officer employed by the City of New York and is and was at all times relevant duly appointed and acting as an officer, servant, employee and agent of defendant the City of New York and the New York City Police Department, a municipal agency of the defendant the City of New York .

19. Defendant Faller is and was at all times relevant acting in the course and scope of his duties and functions as an officer, agent, servant and employee of defendant City of New York,

3

was acting for, and on behalf of, and with the power and authority vested in him by defendant
THE CITY OF NEW YORK.

20. Notwithstanding the wrongful and illegal nature of his acts and conduct as
hereinafter described, he was otherwise performing and engaging in conduct incidental to the
performance of his lawful functions in the course of his duties.

21. Defendant Wells is a Police Officer employed by the City of New York and is and was
at all times relevant duly appointed and acting as an officer, servant, employee and agent of
defendant the City of New York and the New York City Police Department, a municipal agency
of the defendant the City of New York .

22. Defendant Wells is and was at all times relevant acting in the course and scope of his
duties and functions as an officer, agent, servant and employee of defendant  City of New York,
was acting for, and on behalf of, and with the power and authority vested in him by defendant
THE CITY OF NEW YORK.

23. Notwithstanding the wrongful and illegal nature of his acts and conduct as
hereinafter described, he was otherwise performing and engaging in conduct incidental to the
performance of his lawful functions in the course of his duties.

24. Defendant Collins is a Police Sergeant employed by the City of New York and is and
was at all times relevant duly appointed and acting as an officer, servant, employee and agent
of defendant the City of New York and the New York City Police Department, a municipal
agency of the defendant the City of New York .

25. Defendant Collins is and was at all times relevant acting in the course and scope of
his duties and functions as an officer, agent, servant and employee of defendant City of New

4

York, was acting for, and on behalf of, and with the power and authority vested in him by

defendant THE CITY OF NEW YORK.

26. Notwithstanding the wrongful and illegal nature of his acts and conduct as

hereinafter described, he was otherwise performing and engaging in conduct incidental to the

performance of his lawful functions in the course of his duties.

## V. FACTS

27. The incident that gives rise to this complaint commenced on March 7, 2012 at

approximately 7:00 PM at Lawrence's private home and residence located at 255-10 149

Avenue, Rosedale, New York 11422.

28. Lawrence was confronted at her front door by her son David Lawrence and his

wife Yonette Harry Lawrence.

29. David began living in Lawrence's home in 1988.

30. His wife moved into the residence in 2008 with 7 children and occupied the

finished garage space of the home while Lawrence and her brother Basil Miles lived on the

second floor.

31. David and his wife then moved to occupy a room on the second floor of the

residence displacing Lawrence's property and privacy.

32. At the time of the incident on March 7, 2012, David and Yonette and 7 children

were no longer living at the Lawrence residence, having been evicted from the home several

months earlier due to abuse and unlawful occupancy after a notice to vacate.

33. Lawrence had been awarded a final judgment of exclusive possession of her home

on October 12, 2011, by order and decision of civil court Judge Inez Hoyas after protracted

5

housing court proceedings.

34. Both David Lawrence and Yonette were directed by court order to vacate the home by December 31, 2011.

35. When David and Yonette failed to comply with the court order and leave the home as directed by the court, a warrant of eviction was executed by Justin Grossman, Marshall, City of New York on January 18, 2012.

36. Both David and Yonette were forcibly removed from Lawrence's home by the City Marshall with officers from the 105 Pct.

37. These events were documented within the 105 Pct. and the Court order demonstrating the eviction and the warrant of eviction executed by the Marshall were all readily available public documents and based upon information and belief available within the 105 Precinct.

38. On the day of the eviction, the marshal advised Lawrence that under no circumstances was her son and his wife permitted to enter her home again.

39. Shortly after the January 18, 2012 eviction, Lawrence was caused to file a Domestic Violence report on January 23, 2012 with the 105 Pct, under sprint #12539 as a result of verbal abuse and threats she was subjected to by Yonette.

40. This report clearly noted the history of domestic violence between Yonette and Lawrence and that prior Domestic Violence reports had been filed with the 105 Pct.

41. David and Yonette were known to officers in the precinct because Lawrence is listed on the domestic violence watch list at the precinct.

42. As a consequence of the history of domestic violence reports, Lawrence receives

6

regular visits from officers assigned to the domestic violence unit at the 105 precinct to verify her safety.

43. In fact, on the morning of March 7 incident, two officers from the 105 Pct. had visited with Lawrence at her home to check on her safety.

44. The events giving rise to the incident on March 7th 2012 are as follows.

45. On the above date, Lawrence opened the door of her home and Yonette approached Lawrence and thrust papers at her and stated "these are from the Judge."

46. Lawrence took the papers, entered her home and called 911 for police assistance. The police took a very long time to respond to Lawrence's call for assistance.

47. Officer Faller and Officer Wells from the 105 Pct eventually arrived at the residence and spoke first, for some time, with the David and Yonette in the front yard.

48. The officers then knocked on the front door and when Lawrence answered the door the officers advised her that she needed to provide the keys to her home to her son David "as ordered by the Judge."

49. Lawrence showed the officers the papers she had received from Yonette and attempted to explain to the officers that the papers were not valid and her son and his wife knew they were not permitted to enter her home.

50. Lawrence attempted several times to explain to the officers that her son and wife had been lawfully evicted from her home and were not permitted to gain entry.

51. Lawrence went into her bedroom to obtain relevant legal documents, including the eviction order and warrant of eviction to show to the officers and one of the officers followed her into her bedroom.

7

52. The officers expressed an unwillingness to look at Lawrence's documents or listen to her valid, lawful and justified explanations.

53. Lawrence requested to speak with a supervisor.

54. Sergeant Collins was summoned to the residence and arrived and spoke with Lawrence.

55. Sergeant Collins was dismissive, refused to look at any of the legal documents in Lawrence's possession demonstrating the eviction of David and Yonette from the home, and was generally rude and disinterested.

56. The officers requested to know whether anyone else was in the home.

57. Lawrence advised that her brother, an elderly man, also lived in the home.

58. One of officers - in the presence of all of the other officers - went to a rear bedroom to speak with Basil Miles and asked him to step out of the room.

59. The officer requested to know whether Mr. Miles had a key to the premise.

60. When Mr. Miles stated that he did, the officer told him to produce the keys and then removed the keys to the home from him.

61. The housing court "order" at issue (which was reviewed by Collins, Wells and Faller) stated in relevant part that "Keys are to be given for access to the home . . . ."

62. Since the officers had obtained a key to the residence, the officers had no probable cause at this point in time to arrest Lawrence for allegedly not providing a key and for not complying with the "order" because they had in fact obtained a key to the premise.

63. The "Order" did not direct or mandate an arrest so that Collins, Wells and Faller cannot rely on the Order for the justification of the arrest of Lawrence.

8

63A. The "Order" did not indicate that if Lawrence failed to comply with providing keys or access she would held in contempt and subject to imprisonment.

63B. The "Order" did not provide any authority whatsoever to Collins, Wells or Faller to make an arrest.

63C. To sustain a finding of civil or criminal contempt based upon a violation of a court order, it is necessary to establish that a lawful court order clearly expressing an unequivocal mandate was in effect and the person alleged to have violated the order had actual knowledge of its terms.

63D. Further, New York State Judiciary Law section 753 provides in relevant part that civil contempt is addressed, in the discretion of the Court, at a hearing, through testimony or documentary evidence that there was a violation of a lawful court order.

64. There can be no objectively reasonable mistaken belief based upon this order that the arrest of Lawrence was justified.

65. The "Order" has to do solely and only with a seizure of keys and access to the premise.

66. After obtaining the keys to the home from Basil Miles, Collins, Wells and Faller participated in the arrest of Lawrence.

67. In addition, Collins, Wells and Faller deliberately failed to make the most minimal of inquiries into the credibility of readily available and obvious information through independent documentation that David and Yonette had been already lawfully evicted from the home by a marshall's warrant of eviction.

68. Collins, Wells and Faller deliberately failed to make the most minimal of inquiries

9

into the credibility of readily available and obvious information provided by Lawrence that she had previously filed a domestic violence complaint at the 105 Pct and was a victim of domestic violence by and through the actions of David and Yonette.

69. Records and information was available at the 105 Pct which would demonstrate that Lawrence had filed a domestic violence report, Lawrence participated in the domestic violence program at the 105 Pct and David and Yonette had been lawfully evicted from the home through a marshall's warrant of eviction.

70. Collins, Wells and Faller deliberately failed to obtain verification that David and Yonette resided at the residence; the most basic inquiry of all.

71. Collins, Wells and Faller deliberately refused to review any of the documentary evidence at the 105 Pct which would have demonstrated the facts in paragraphs 67-68 and thus deliberately failed to make a reasonable inquiry before arresting and confining Lawrence.

72. The records supporting the domestic violence report; Lawrence's participation in the domestic violence program at the 105 Pct. and the eviction of David and Yonette from the home were in Lawrence's possession at the home and Collins, Wells and Faller deliberately refused to review the documents and make a reasonable inquiry before arresting and confining Lawrence.

73. Collins, Wells and Faller, in participating in the arrest of Lawrence, are not free to disregard plainly exculpatory evidence.

74. Lawrence, an elderly woman who was a victim of domestic violence, was placed in handcuffs in front of her brother, her son David and his wife Yonette.

75. Lawrence was removed from her home in handcuffs in front of her neighbors.

10

76. The handcuffs were too tight and uncomfortable.

77. Lawrence was placed under arrest by Wells with the cooperation of Faller and the ratification of Collins.

78. Lawrence was placed her in the rear seat of the police vehicle.

79. There was not enough room in the rear seat for Lawrence to place her legs in front of herself while seated because the front seat had been pushed so far back.

80. Lawrence was caused to twist her body sideways to accommodate her legs in the vehicle.

81. This distorted position caused her great physical discomfort and spasms in her back and her shoulder.

82. Lawrence suffers from osteoporosis and this positioning caused soreness and a throbbing pain in her shoulder radiating to her neck.

83. Lawrence was transported to the 105 Pct in this position.

84. At the 105 Pct. Lawrence was handcuffed to a bench by a police officer before being placed in a holding cell at the precinct.

85. Lawrence was photographed and fingerprinted several times by Wells.

86. Lawrence was not permitted to speak with her daughter for over two hours, despite the fact her daughter had raced to the precinct from Long Island and requested to speak with her mother.

87. The Collins, Faller and Wells refused to conduct even a minimal inquiry into the information provided by Lawrence's daughter which would have supported the fact that David and Yonette were evicted from the home, Lawrence filed a domestic violence complaint against

11

them and Lawrence was participating in the 105 Pct. domestic violence program.

88. Rather than make some reasonable inquiries, the officers sat around laughing and joking, insensitive and rude to the needs and concerns of an elderly woman and her daughter.

89. At approximately 3:00 AM, Lawrence was removed from the 105 Pct to Queens Central Booking.

90. From 3:00 AM until 4:30 AM, Lawrence was detained with four other women and standing much of the time in a cell at Queens Central Booking.

91. At 4:30 AM Lawrence was moved to another cell by herself so that she could sit down.

92. Lawrence remained in Central Booking until 6:30 PM the following day.

93. Arresting officer Wells refused to permit Lawrence to have her blood pressure medication. This put her at risk emotionally and physically of a stroke or heart attack.

94. Lawrence was extremely distraught, anxious and distressed.

95. Lawrence never committed a criminal offense and never had any prior contact with the criminal justice system.

96. On March 8, 2012, Lawrence was advised in a letter signed by Barry Pinto of the Queens District Attorney's Office that after a review of the arrest records under arrest number Q12614465 the case was dismissed prior to criminal court arraignment.

97. Lawrence was released from custody but not before the damage was done.

98. There was no basis for the arrest and custodial detention of Lawrence by the New York City Police Officers each of whom is an agent and employee of the City of New York.

99. Among the officers involved in the actions and conduct described in this claim, the

12

arresting officer is believed to be Police Officer Wells.

100. There was no probable cause for the arrest of Lawrence.

101. Lawrence was falsely arrested and treated with disdain, disrespect and rudeness.

102. There was no basis for the handcuffing of Lawrence.

103. There was no basis for the imprisonment of Lawrence.

103A. Lawrence was confined within her home, at the 105 Pct and then confined at Queens Central booking by the defendant officers acting individually and collectively because she was not free to leave.

103B. Lawrence was conscience of the confinement and did not consent to being confined and the confinement was not privileged.

104. The arrest was propelled by a collateral objective and improper motive in that this arrest was propelled by the highly developed quota system in the 105 Pct which requires officers to make arrests or face adverse employment action, such as loss of vacation time or days off or assignments.

105. The arrest and confinement described in this claim were propelled by the highly developed quota system/policy in the 105 Pct. which requires officers to make arrests or face adverse employment actions, such as loss of vacation time or days off or assignments.

106. Commissioner Kelly, as the final policy maker of the police department, has developed and implemented a system of quotas mandating numbers of arrests, summons and stops and frisks.

107. This quota system policy is utilized throughout the New York City Police Department and exerts pressure on police officers to "produce" arrest numbers and

13

summonses without consideration whether such arrests are valid or not.

108. This policy causes officers to seek out arrests where there is no probable cause for such and no basis for the handcuffing and imprisonment of an individual, and, by such, to generate arrest statistics and to otherwise use such arrests as examples of crime reduction in the 105 Pct. and the effectiveness of the commanding officer in this Precinct.

109. Arrest statistics are used to advance the careers of command officers and line officers to the detriment of those arrested based upon this policy.

110. These policies and practices have a disproportionate impact on individuals of color who, because of their race and/or color such as Lawrence, are often times singled out for such arrests.

111. These policies and practices have a disproportionate impact on communities of color, such as Rosedale Queens, inhabited largely by individuals of color who are disproportionately affected by the quota system.

112. Lawrence is a victim of this quota system because her arrest was not motivated by probable cause but by the need of these officers to generate arrest statistics.

113. Lawrence was unlawfully taken into custody and falsely arrested and subjected to excessive and unreasonable and unnecessary detention and racially discriminatory conduct and otherwise unlawful, unnecessary and unreasonable conditions associated with her detention and custodial arrest including handcuffing.

114. Pursuant to the above noted policies, officer Wells was compelled to effect an arrest and this arrest was placed in his activity report and tracked as part of his mandated quota.

14

115. Pursuant to the above noted policies, officer Faller received credit for assisting in the arrest and was compelled to assist and effect an arrest and this arrest was placed in his activity report and tracked as part of his mandated quota.

116. If Officer Wells does not meet his arrest quota, he faces the possibility of punishment or other adverse actions.

117. If Officer Faller does not meet his assist arrest quota, he faces the possibility of punishment or other adverse actions.

118. Collins, as a supervisor, is forced to make sure the arrest quota policy is enforced and effective leading to his participation and ratification, absent any meaningful inquiry, into the arrest of Lawrence.

119. The action, conduct, policies and practices and customs herein described violated Lawrence's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 USC Section 1983.

120. The actions, conduct, policies and practices and custom violated Lawrence's rights under the law and Constitution of the State of New York including false arrest, excessive, unnecessary and unreasonable detention, and an unlawful handcuffing and associated excessive, unnecessary, and unreasonable force and detention.

121. The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by Lawrence.

122. Lawrence now suffers with post-traumatic stress, debilitating fear and anxiety, mental distress, humiliation, embarrassment, a sore and painful shoulder, uncontrollable emotion, loss of sleep, appetite and the enjoyment of basic activities of living.

123. Lawrence has not yet placed a monetary value on the damages which she has incurred although she believes them to be substantial and to include compensatory damages against the City of New York and compensatory and punitive damages against the officers involved for her unlawful arrest, loss of liberty, unlawful confinement, excessive use of force, and other claims as described below.

### FIRST CAUSE OF ACTION:
### FALSE ARREST

124. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125. Each defendant, by their conduct and actions in falsely arresting plaintiff, without lawful justification, negligently, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, collectively and individually, caused injury and damage in violation of plaintiff's constitutional rights, state constitutional rights and tort law.

126. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs and the violation of the constitution of the United States and state law.

127. Plaintiff Lawrence suffered injuries and damages.

### SECOND CAUSE OF ACTION:
### FALSE IMPRISONMENT

128. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

16

129.  By their conduct and actions in falsely imprisoning plaintiff, without lawful justification, negligently, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, defendants, collectively and individually, caused injury and damage in violation of plaintiff's constitutional rights, state constitutional rights and tort law.

130. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs and the violation of both the constitution of the United States and state law.

131. Plaintiff Lawrence suffered injuries and damages.

## THIRD CAUSE OF ACTION:
## MALICIOUS PROSECUTION

132. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set herein.

133. The defendants commended a criminal proceeding against the plaintiff by and through her arrest, the proceeding was terminated in her favor in that the charges were dismissed; there was no probable cause for the commencement of a criminal proceeding against the plaintiff and the proceeding was instituted with actual malice due to the wrong or improper motive of the defendants in effecting an arrest to fulfill an arrest quota not because there was probable cause for such.

134. Defendants were not motivated by a lawful purpose but by the need to generate arrest numbers.

135. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs.

17

136. Plaintiff Lawrence suffered injuries and damages.

## FOURTH CAUSE OF ACTION:
### DENIAL OF DUE PROCESS

137. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set herein.

138. The plaintiff was subjected to a denial of due process and loss of liberty by the defendants as afforded to her by the constitution of the United States and the State of New York.

139. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs.

140. Plaintiff Lawrence suffered injuries and damages.

## FIFTH CAUSE OF ACTION:
### EXCESSIVE USE OF FORCE

141. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

142. By their conduct and actions in using excessive force against plaintiff, without lawful justification, negligently, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, defendants, collectively and individually, caused injury and damage in violation of plaintiff's constitutional rights, state constitutional rights and tort law.

143. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs.

144. Plaintiff Lawrence suffered injuries and damages.

18

**WHEREFORE,** plaintiff demands the following relief jointly and severally against all of

the defendants:

- a. Compensatory damages in an amount to be determined at the time of trial;

- b. Punitive damages against the individually named defendants;

- c. The convening and empanelling of a jury to consider the merits of the claims;

- d. Attorney fees and costs,

- e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
July 6, 2012

Respectfully Submitted,

Meenan & Associates, LLC
*Attorney for Plaintiff*
64 Fulton Street, Ste 502
New York, New York 10038
(212) 226-7334

By: Colleen M. Meenan

Colleen M. Meenan
cmm@meenanesqs.com

19